IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 3-06-CR-0069-D(01) |
| | § | NO. 3-08-CV-1161-D |
| JERRY EDWARD HOLBROOK | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant Jerry Edward Holbrook, a federal prisoner, has filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be denied.

I.

Defendant pled guilty to one count of mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341 & 2. Punishment was assessed at 46 months confinement followed by supervised release for a period of three years. The court also ordered defendant to pay restitution in the amount of $3,191,412.16. His conviction and sentence were affirmed on direct appeal. *United States v. Holbrook*, 499 F.3d 466 (5th Cir. 2007). Defendant now seeks post-conviction relief under 28 U.S.C. § 2255.

II.

In two related grounds, defendant contends that he received ineffective assistance of counsel at sentencing when his attorney failed to effectively cross-examine two government witnesses and did not call an expert retained by defendant to testify as to the value of his company's assets. Defendant also complains that his appellate counsel was ineffective for failing to proffer the

testimony of the missing defense expert and for not arguing that a key government witness had a conflict of interest.

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). In order to obtain post-conviction relief due to ineffective assistance of counsel during the punishment phase of a non-capital case, a defendant must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable professional service. *Id.*, 104 S.Ct. at 2064-65. Second, the defendant must establish prejudice--that he was subjected to increased jail time due to the deficient performance of his attorney. *See United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004), *citing Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990). A defendant must affirmatively show how the actions of his attorney deprived him of a fair trial. *Czere v. Butler*, 833 F.2d 59, 63-64 (5th Cir. 1987).

B.

The pertinent facts of this case were summarized by the Fifth Circuit in *United States v. Holbrook*, 499 F.3d 466 (5th Cir. 2007). In March 2002, Command Staffing, an employment agency owned by defendant, Shane Sharp, and Randy Throckmorton, sold its accounts receivable to Sun Capital, Inc. Included in the sale were six fictitious customer accounts. Defendant and his co-owners created fake invoices for the fictitious accounts and sent the invoices to Sun Capital. Upon

receipt of the invoices, Sun Capital wired 80% of the account balance to Command Staffing. The customers were then to pay the entire amount of the invoice to Sun Capital. To keep the scheme going, defendant and his co-owners created fake bank accounts in the names of the customers and made *Ponzi* payments to Sun Capital from the funds wired to Command Staffing. This occurred for more than 12 months. During that time, Command Staffing submitted false invoices totaling $10.9 million. Sun Capital paid Command Staffing $8.8 million and Command Staffing returned $5.6 million to Sun Capital in *Ponzi* payments.

When the scheme was discovered, Sun Capital attempted to place a lien on certain assets of Command Staffing, which were offered as collateral for the sale and a $5.2 million loan. However, Sun Capital learned that another investor already had a lien against Command Staffing as collateral for a prior business loan. Sun Capital then purchased the lien from the investor and acquired all the shares of Command Staffing and its subsidiary companies, including Symbio Solutions, which was developing a web-based human resource application for use by hospitals. After Sun Capital acquired Symbio, it invested $10 million in the company.

The presentence report ("PSR") initially recommended an 18-level increase in the offense level based on a loss of $3.2 million to Sun Capital. (*See* Gov't Resp. App., Exh. B at 8, ¶ 41, *citing* U.S.S.G. § 2B1.1(b)(1)(J)).[1] Upon learning that Sun Capital exercised its right to take over Command Staffing and its subsidiaries, thereby converting the pledged collateral to its sole ownership, the probation officer reduced the amount of loss to zero. (*Id.*, Exh. B at 19). In an addendum to the PSR, the probation officer wrote:

---

[1] Under the sentencing guidelines, the base offense level for mail fraud is six. *See* U.S.S.G. § 2B1.1(a)(2). If the loss exceeds $2.5 million, there is an 18-level increase in the base offense level. *Id.* § 2B1.1(b)(1)(J).

> Command Staffing was collateralized to protect the financial interest of Sun Capital in the event of a loss. Based on the fact that Throckmorton, Sharp, and Holbrook surrendered Command Staffing as the pledged collateral under a defaulted loan, triggered by the $4 million loss determined by Sun Capital, the acquisition of Command Staffing is considered a credit against loss under the guidelines.
>
> Thus, Sun Capital's acquisition of Command Staffing, collateralized against the $5.2 million loan, offsets the $3.2 million net loss previously reported in the Presentence Report.

(*Id.*, Exh. B at 20, *citing* U.S.S.G. § 2B1.1, app. n. 3(E)(ii)).[2] The government objected to the revised guideline calculation, arguing that Command Staffing was not pledged as collateral until after the offense was detected and the company did not have sufficient value to justify such a reduction. (*Id.*, Exh. B at 23-24).

At sentencing, the government called two witnesses: (1) Steven Scott Camp, an attorney who represented Sun Capital in the transactions with Command Staffing; and (2) Ronald J. Caddell, Chief Financial Officer of Symbio, who testified that Sun Capital would not sell Symbio for less than the $10 million it had invested in the company. No witnesses testified on behalf of defendant. After hearing the evidence, the court sustained the government's objection to the revised loss calculation. In explaining his ruling, the judge stated:

> The Court . . . is going to assume that Symbio had collateral. That is covered by the original document that is the basis. That is to say the master purchase and sales agreement of March 11, 2002.
>
> Even so, the way the application note operates is to reduce the loss amount set forth in 2B1.1(b)(1) by valuing the fair market value of the

---

[2] Application note 3(E)(ii) provides that the amount of loss shall be reduced by:

> In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

U.S.S.G. § 2B1.1, app. n. 3(E)(ii).

collateral at the time of sentencing, in the event the collateral has not been disposed of by that time.

The Court finds that, apart from some amount of value that it's going to conclude in a moment would not affect sentencing for reasons I'm going to explain, the fair market value that the collateral Symbio had initially, compared to what it is now, is either entirely or almost entirely the result of new capital investments made by the victim.

\* \* \* \*

My interpretation of the guideline is that a defendant is not entitled to the benefit of fair market value that either entirely or almost entirely is the result of the victim's investment in the collateral.

This would be a difficult case or a more difficult case if we had collateral that had some measurable value at the time of the crime or the time of detection if we used the concepts of (3)(E)(i) to understand that.

And indeed, if it had some value, I would be inclined to agree with the argument that Mr. Hawkins makes, and I assume is adopted by co-counsel, that a defendant is entitled to the benefit of the increased value, fair market value, of the collateral and perhaps is even entitled to the benefit of increases that are the result of a confluence of new investments, as well as other economic circumstances.

Here, however, I find that the value of Symbio at the time was either zero or its value was so small that whatever fair market value it has today is almost entirely, if not entirely, the result of the victim's investment.

Now I said earlier that I would be relating the application note back to 2B1.1(b)(1). Let's assume for a moment that there is some value to be accorded to the potential of the ideas or the company. Even though at the time it had only computers, a demonstration prototype and 350,000 lines of code, there was some value.

If you look at the advisory guideline, in order for the guideline to drop from 18 additional levels to only 16 additional levels, that's a $1.5 million range. And I find, based upon a preponderance of the evidence, that has a sufficient indicia of reliability to support its probable accuracy that whatever value that company had at the time would not be in excess of the $1.5 million necessary to reduce 18 levels down to 16 levels.

(*Id.*, Exh. A at 163-65). On direct appeal, the Fifth Circuit upheld that finding and the district court's application of section 2B1.1(b)(1). *Holbrook*, 499 F.3d at 469.

Defendant now contends that his attorney failed to effectively cross-examine the two government witnesses and should have called an expert to testify that the value of his company's assets "supported an investment of about 30 million dollars." (Def. Mot. at 7). Although defendant claims that neither Steven Scott Camp nor Roger J. Caddell were qualified to give expert testimony as to the value of Symbio's assets, such is not the case. Camp is an intellectual property lawyer who represented Sun Capital in the transactions involving Command Staffing, including the acquisition of Symbio. Caddell is Symbio's Chief Financial Officer. Other than his conclusory attacks on the qualifications of these witnesses, defendant fails to articulate a legitimate objection to their testimony that would have been sustained by the district court. Nor has defendant identified the missing defense expert or proffered the substance of his testimony.[3] Without such a showing, defendant cannot establish his entitlement to post-conviction relief. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (court cannot begin to analyze claim of ineffective assistance of counsel without affirmative showing of missing evidence or testimony).

C.

Defendant also criticizes his appellate lawyer for failing to proffer the testimony of the missing defense expert and for not arguing that a key government witness had a conflict of interest. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419

---

[3] In reviewing the sentencing transcript, it appears that the missing defense expert may be Clint Lovell, an investment broker, who signed an affidavit suggesting that Symbio might support an initial investment of $30 million in equity financing. (*See* Gov't Resp. App., Exh. A at 43-44). However, that affidavit was before the court at the time of the sentencing hearing.

(1989); *see also Jones v. Barnes*, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 3313-14, 77 L.Ed.2d 987 (1983). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004); *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id., quoting Williamson*, 183 F.3d at 462.

Appellate counsel raised a single non-frivolous issue on direct appeal--the district court misapplied the sentencing guidelines when it refused to offset the amount of loss by the value of collateral pledged to the victim. Although defendant claims that his attorney was ineffective for failing to proffer on appeal the testimony of a missing defense expert, counsel was limited to arguing error based on the record developed at trial, and no such proffer was made at the sentencing hearing. Defendant also fails to identify the government witness who had a conflict of interest, much less explain the nature of that conflict. His conclusory allegations are insufficient to raise a cognizable claim of ineffective assistance of counsel. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

## RECOMMENDATION

Defendant's motion to correct, vacate, or set aside sentence should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal

conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 17, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE